**Territorial Law Library**

# IN THE SUPERIOR COURT OF GUAM

RON MORONI and PHYLLIS KOEGEL, )
                                 )
                   Plaintiffs, )
                                 )
    vs.                             )
                                 )
                                 )
FRANKLIN CASTRO, ANTHONY JAMES)
CASTRO, and BANK OF HAWAII, )
                                 )
                                 )
                 Defendants. )
_____ )

CIVIL CASE NO. CV1004-05

**FINDINGS OF FACT
AND
CONCLUSIONS OF LAW**

## INTRODUCTION

This matter initially came before the Honorable Arthur R. Barcinas on the 16th day of June, 2010, for trial. Trial was commenced on that day and was resumed and completed on the 16th day of August, 2010. Attorney Ron Moroni represented the Plaintiffs, and Attorney Phillip Torres represented the Defendants Franklin Castro and Anthony James Castro. The Bank of Hawaii did not appear for trial, through counsel or otherwise. At trial, all of the exhibits submitted by both parties were admitted into evidence. The Court now issues the following Findings of Fact and Conclusions of Law on the matter.

## FINDINGS OF FACT

This Court has jurisdiction over this matter pursuant to 7 GCA §3105. After hearing all the evidence and testimony presented in this case, this Court finds by a preponderance of the evidence, that:

1.     The Plaintiffs appeared in this action by filing a Complaint on October 25, 2005. The Defendants Castro appeared by filing an Answer and Counterclaims on November 14, 2005. The Plaintiffs filed an Answer to Counterclaims on November 23, 2005. Later, the Plaintiffs filed an Amended Complaint, adding Defendant BOH as a party on August 30, 2006. Defendant BOH never filed an

answer.

2. Plaintiffs acquired Lot No. 16, Block 10, Tract 232, Sinajana, Guam (hereinafter referred to as "Lot 16") by a Warranty Deed which they executed as Grantees on December 2, 2003. Defendant Anthony Castro is the owner of the adjoining lot, Lot No. 15, Block 10, Tract 232, Sinajana, Guam (hereafter referred to as "Lot 15"), which is registered land, originally registered on August 19, 1949, under Certificate of Title No. 3313, and now recorded under Certificate of Title number 118624. Defendant Franklin Castro currently resides on Lot 15.

3. At the time Plaintiffs acquired their property, they obtained a loan from the Bank of Hawaii. As part of the loan process, Bank of Hawaii also conducted a survey and appraisal of the property. Efren Santos, a licensed surveyor, was hired by the Bank of Hawaii to conduct a retracement survey. After surveying the property, Mr. Santos also created a map which was recorded at the Guam Department of Land Management. Robert Prieto, an appraiser, was hired by Bank of Hawaii to make an appraisal of the property, and did so, writing an Appraisal Report dated November 3, 2003.

4. In 2005, Defendants decided to build a fence on Lot 15, just inside the boundary line between Lot 16 and Lot 15. According to the testimony of Defendant Franklin Castro and corroborated by Plaintiff Moroni's testimony, Plaintiff Moroni objected to the proposed placement of the fence and stated that it would encroach upon his property. The objection was based upon a visual sighting of Plaintiff Moroni's understanding of the boundary line.

5.      In response, Defendant Franklin Castro hired Meliton Santos to identify the points and provide a sight line to identify the boundary. Meliton Santos prepared a detailed map containing the location points of the boundary between Lot 15 and Lot 16. He identified the Southwestern terminal point of the boundary to be located at N 196079.4553, E 100281.4862, and he identified the Northeastern terminal point of the boundary nearest Senator Gibson Drive to be located at N 196109.8145, E 100413.8503.

6.      Using these points to determine the boundary line, Meliton Santos found that the driveway/CMU wall of the Plaintiffs is encroaching on Lot 15. He computed the area of encroachment as having a length of 3.9 meters, a width of .508 meters, and a height of 3.353 meters. In total area, the encroachment encompasses 1 square meter or 11 square feet. Meliton Santos also found that there is a small encroachment of the Plaintiffs' concrete stoop at the base of the stairwell landing, which has a total area of .04 square meters or .48 square feet.

7.      Defendant Franklin Castro drew a piece of colored string from the lower boundary of the property all the way up to the top boundary marker that Meliton Santos placed near the roadway. Based upon this line, it was made readily apparent that the driveway/CMU wall on which Plaintiff Moroni parks his car is encroaching upon Defendants' property. The fact of the encroachment is undisputed. According to the testimony presented by all witnesses, the only disputed issue regarding the encroachment is the size of the encroachment.

8.    Plaintiff Moroni hired surveyor Efren Santos to identify the points of Lot 16, on his behalf. Efren Santos conducted a survey and identified the same lower marker as identified by Meliton Santos, however, he located the northernmost marker, nearest the street, approximately three inches apart from the survey marker found by Mr. Meliton Santos. Efren Santos did not provide an exact location for the northernmost marker, and no latitudinal or longitudinal points were ever identified for this marker by Efren Santos. Both Meliton Santos and Efren Santos testified that their surveys are accurate, and that the driveway/CMU wall is encroaching on Lot 15.

9.    In September of 2005, Defendant Franklin Castro built a fence near the boundary between Lot 15 and Lot 16. The fence is located entirely on Lot 15.

10.   According to the testimony of Efren Santos, in 2005, he informed Plaintiff Moroni that the boundary near the fence line was accurate at the time he conducted the appraisal, and that the string which marked the fence line was not encroaching on Lot 16. Thus, Plaintiff Moroni was aware that there was no evidence to support claims of encroachment by the Defendants' fence prior to filing the lawsuit.

11.   Plaintiff Moroni is also an attorney, and is the attorney representing the Plaintiffs in this suit.

12.   Mr. Ismael Hemlani, a prior owner of Lot 16, testified that he built the driveway/CMU wall in or about 1987 or 1988 upon what he thought was Lot 16.

13.   Mary Castro Perez was the prior owner of Lot 15, and transferred ownership to Plaintiff Anthony Castro in 2000. She testified in a deposition that she owned Lot

15 when Mr. Hemlani built the driveway/CMU wall, and was unaware that Mr. Hemlani had built the driveway/CMU wall on a portion of Lot 15. She testified that she never objected to the building of the driveway/CMU wall as she was unaware of the encroachment. She further stated that she never gave him permission to build the driveway/CMU wall so that it encroached on Lot 15. She testified in her deposition that she had Lot 15 surveyed in the 1990's, by Paul Santos, after the driveway/CMU wall had been built, but that he did not tell her that the driveway/CMU wall encroached on Lot 15, and she did not see any encroachment on the survey map she signed.

14. Paul Santos, now the head of the survey department at the Department of Land Management, prepared a survey of Lot 15 in 1992 or 1993. Pls.' Ex. 19. This survey map did not specifically identify the geographical points of the boundary between Lots 15 and 16. The survey map appears to show a possible boundary encroachment in Detail "A." Although Detail "A" appears to show a possible boundary issue, the words and numbers on the exhibit in the Detail "A" inset are illegible. Paul Santos testified that he does not recall informing the Castro family of the driveway/CMU wall encroachment when he performed the survey. Paul Santos also testified regarding the two to three inch variation between the surveys of Meliton Santos and Efren Santos. Paul Santos is unrelated to the other two surveyors, and testified that when a minor location point dispute occurs, oftentimes, he or the surveyors will compromise and split the numerical difference between the two points by locating the point at a midpoint between the two points.

15.    Defendant Anthony Castro testified that the driveway/CMU wall is crumbling near its foundations, and is showing signs of instability and deterioration. He stated that portions of the CMU wall are now falling away, and landing on the ground of Lot 15. Defendant Franklin Castro also testified and presented photographic evidence that portions of the driveway/CMU wall are eroding and that the soil underneath the driveway/CMU wall is washing away, undermining the support for the driveway/CMU wall.

16.    The Plaintiffs' claims are as follows:

A)    Trespass, based upon their assertion that Defendants built their fence on Plaintiffs' property, Lot 16;

B)    Ejectment, based upon the allegedly encroaching fence on Plaintiffs' property;

C)    Boundary dispute, requesting that the Court identify the proper boundary line between the parties' properties;

D)    Private nuisance, based upon the Defendants' construction of the fence causing an intrusion onto Plaintiffs' property;

E)    Adverse possession of a portion of Lot 15, based upon the encroachment by the driveway/CMU wall onto the Defendants' property, Lot 15;

F)    Boundary by estoppel/acquiescence, based upon the allegedly permissive encroachment of the driveway/CMU wall upon Defendants' property;

G)      Easement by prescription, based upon encroachment by the driveway/CMU wall upon Defendants' property;

H)      Interference with easement, based on the placement of the fence on Plaintiffs' property; and

I)      Negligence, based upon the Defendant BOH's failure to inform the Plaintiffs of a possible boundary issue regarding Lot 16.

17.     The Plaintiffs' formal requests for relief are as follows:

A)      that the Defendants be enjoined from trespassing on Lot 16;

B)      that the Court determine the correct boundary between Lots 15 and 16, and adjudicate the rights of all parties to the disputed areas;

C)      that the Defendants be ordered to remove the fence, if it is encroaching on Lot 16;

D)      that if the Plaintiffs' driveway/CMU wall is determined to be encroaching on Lot 15, that the Court find that the Plaintiffs have an easement over that portion of Lot 15;

E)      that if the Plaintiffs are determined to have an easement over Lot 15, that the Defendants be enjoined from harassing, disturbing or interfering with the Plaintiffs' quiet enjoyment of the easement;

F)      that the Defendants Castro and the Defendant BOH be ordered to pay monetary damages to the Plaintiffs; and

G)      that the Plaintiffs be awarded any other relief to which they are entitled.

18. Rule 8(f) requires that "all pleadings shall be so construed as to do substantial justice." From a plain reading of the Answer and Counterclaims filed by the Defendants Castro, there appear to be requests for relief which are not specifically named, and thus, as determined by the Court, the Defendants' counterclaims and requests for relief are as follows:

    A) Trespass, for which the Defendants request Injunctive relief, asking that the encroaching driveway/CMU wall be removed from their property;

    B) Declaratory Relief, asking for a determination of the correct location of the disputed boundary, and a determination of the disputed rights of the parties to Lots 15 and 16;

    C) Declaratory Relief, requesting a determination that Plaintiffs' fence does not encroach upon the Plaintiffs' property; and

    D) an award of attorneys' fees and costs.

## CONCLUSIONS OF LAW

A) <u>Defendant Bank of Hawaii</u>

The Court must first address Defendant Bank of Hawaii's absence from the trial. The Plaintiffs filed an amended complaint on August 30, 2006, adding a single new claim of negligence against three new defendants, Defendant Santos, Defendant Prieto, and Defendant Bank of Hawaii (hereinafter "BOH"). Defendants Santos and Prieto are no longer defendants in this case based upon the Court's previous determinations. However, the Court did not dispose

of the claim(s)[1] against Defendant BOH prior to trial. Defendant BOH never filed an answer in this case, and first appeared through counsel only, at a hearing held on September 15, 2008, for which Defendant BOH received service of a "notice of hearing" on February 19, 2008, from the Court. The notice of hearing form served on Defendant BOH stated that the hearing would occur on March, 31, 2008, however, this hearing did not occur, and presumably, was continued. Accordingly, Defendant BOH's counsel made its first appearance at a scheduling conference in the case on September 15, 2008.

The Court is at a loss to explain its current situation. The Plaintiffs specifically amended their complaint to add the Defendant BOH as a party and assert a claim of negligence against it. However, during his testimony at trial, Plaintiff Moroni stated that he intentionally never served the Defendant BOH because he decided that he did not want to expand the lawsuit any further, and at the conclusion of the trial, no judgment was requested on the claim of negligence against the Defendant BOH. Despite this asserted intentional failure of service, the Plaintiffs also never moved to dismiss the claim against Defendant BOH, so that it remains a named Defendant in the case. In addition, although Defendant BOH's counsel made a first appearance at the scheduling conference on September 15, 2008, Defendant BOH also has never requested dismissal of the

---

[1]
The Court has previously noted that due to the poor drafting of the Amended Complaint, it appears as though all of the named Defendants are charged with all of the claims contained therein:
> The Amended Complaint continuously and repeatedly refers to the "Defendants" throughout the entire pleading. The plain reading of the word "Defendants" without the addition of any qualifying statements or specific references to individual defendants includes all of the named defendants. Accordingly, as it is written, the Court can find no method of distinguishing between each of the Defendants named in the Amended Complaint . . .

Moroni et. al. v. Castro et. al., Civil Case No. 1004-05, Decision and Order re Defendant Prieto's Motion for Summary Judgment, p. 13, lines 15–20 (September 9, 2009).

claims against it. Accordingly, the Court must *sua sponte* address its ability to enter judgment against Defendant BOH or dismiss the claim against it, as the trial on all claims has now concluded. *See* Rule 4(m)(2010).

Rule 4 of the Guam Rules of Civil Procedure requires that each defendant named in a case must be personally served with a copy of a summons and complaint in order for the court to assert personal jurisdiction over each named defendant, unless such defendant files a waiver of service. GRCP Rule 4(a), (b), ( c), and (d)(2010). GRCP Rule 4(e) requires that service must occur either in person, at the person's residence by leaving it with a household member of suitable age, or by serving the person's agent, in order to be effective as personal service. GRCP Rule 4(e)(2)(2010). Personal service under Rule 4 must be made within 180 days of the filing, but may be extended by the Court for good cause. GRCP Rule 4( c), and (m)(2010). In the alternative, GRCP Rule 4(e)(1) also allows the service to be made by any other means authorized by the laws of Guam, pursuant to certain conditions. All of these rules apply to corporations that are named as defendants. GRCP Rule 4(h)(2010).

Although the current version of GRCP Rule 4 no longer allows personal service through publication and mailing, 7 GCA § 14106 still provides for service by publication and mailing instead of personal service under GRCP Rule 4, when an application is made to the Court upon a verified affidavit that the person cannot be found on Guam. 7 GCA § 14106 states in relevant part:

(a) *Where the person on whom service is to be made has departed from Guam, and cannot, after due diligence, be found in Guam*, or conceals himself to avoid the service of summons . . . *and the fact appears by affidavit to the satisfaction of the court, or a judge thereof,* and it also appears by such affidavit, or by the verified complaint on file, that a cause of action exists against the defendant in

Page 10 of 37

respect to whom the service is to be made . . . *such court or judge may make an order that the service be made by the publication of the summons and by mailing the complaint and summons.* (b) Service by mail shall be by any kind of U.S. Postal Service delivery that provides for written proof of mailing, written proof of delivery and restricted delivery to the addressee only.

Title 7 GCA § 14106 (2010)(emphases added).

Service by publication and mailing under 7 GCA §14106 may only be made in lieu of personal service under GRCP Rule 4 pursuant to an order from a judge. Only upon verified affidavit or complaint, to the satisfaction of the court that the person cannot be found, may a judge issue an order for publication and mailing. A party may not take it upon themselves to provide service through publication and mailing under 7 GCA § 14106, the court must order it first. Even if ordered by the court, this service must still be effected upon the person or entity in order to subject the person or entity to the jurisdiction of the court.

As of this date, the Plaintiffs have, admittedly, never complied with GRCP Rule 4 or 7 GCA §14106. There is no evidence of personal service, service at the Defendant's offices, or service with an agent of the Defendant BOH, of the summons and amended complaint, as required under GRCP Rule 4. Further, there is no record that the Plaintiffs have ever filed a verified affidavit setting forth facts to show that the Defendant BOH cannot be located on Guam, nor is there any order of the Court allowing service through publication and mailing. There is nothing in the Court's record to show that the Defendant BOH was ever served with a summons and a copy of the Plaintiff's Amended Complaint, filed on August 30, 2006. All that exists in the record is evidence of service of a "notice of hearing," which was served on the Defendant BOH on February 19, 2008. This does not satisfy the mandates of 7 GCA § 14106 or Rule 4.

Under Pineda v. Pineda, 2005 Guam 10, analyzing an entry of default after defective service by mailing under 7 GCA § 14106:

> It is well settled that when a default judgment is entered without proper service, such default is void. This is because the trial court lacks personal jurisdiction if service is defective, and thus, any judgment rendered is void. *See M & K Welding, Inc. v. Leasing Partners L.L.C.*, 386 F.3d 361, 364 (1st Cir. 2004) (explaining as the "governing principles . . . that a default judgment issued without jurisdiction over a defendant is void, that it remains vulnerable to being vacated at any time, and that such jurisdiction depends on the proper service of process or the waiver of any defect"); *U.S. v. One Toshiba Color Television*, 213 F.3d 147, 156 (3rd Cir. 2000) ("As a general matter, we have held that the entry of a default judgment without proper service of a complaint renders that judgment void."); *Recreational Props., Inc. v. Southwest Mortgage Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986) ("If a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void and the district court must set it aside.").

Pineda v. Pineda, 2005 Guam 10 at ¶10 (Sup.Ct. Guam 2005).

To this date, there is no evidence that personal service or service under 7 GCA § 14106 has been made upon the Defendant BOH. The Plaintiff has failed to provide the Court with proof of service upon Defendant BOH as required under GRCP Rule 4(l), and in fact, has admitted that no service was effected upon the Defendant BOH. Accordingly, at this time, the Court has no personal jurisdiction over the Defendant BOH, and no judgment can be entered against Defendant BOH.

However, the Court's analysis does not end here, as no voluntary dismissal was ever filed by the Plaintiffs pursuant to GRCP Rule 41(a)(1), and thus, dismissal can now only be made upon such terms and conditions that the Court deems just under GRCP Rule 41(a)(2). Pursuant to GRCP Rule 4(m), personal service must be made within 180 days of the filing, but may be extended by the Court for good cause. According to the Court's calculations, the last date upon which the Plaintiffs could have effected personal service upon the Defendant BOH, within the

time set by the rule, was February 26, 2007. This date was also the last date upon which to timely request an extension of time to provide service for good cause, or to request service through publication and mailing upon filing a verified affidavit with the Court pursuant to 7 GCA § 14106. The Plaintiffs failed to timely perform any of the above options.

More importantly, the Defendant BOH's appearance through counsel did not constitute a waiver of personal service. Personal service can be waived, if a defendant files an answer or a motion (whichever occurs first) without raising an objection to the manner in which he was served. GRCP Rule 12(h)(1); *see also* Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982) (a defendant who has a defense to personal jurisdiction may waive the defense by his subsequent conduct). However, Defendant BOH never filed an answer or a waiver of personal service, as would waive personal service under GRCP Rules 4(d) and 12(h)(1), and in fact, never filed anything in the case. Defendant BOH was only present at a hearing at the instance of the Court, which issued a summons to Defendant BOH specifically to command its appearance at that hearing. Further, Defendant BOH's appearance occurred approximately one year after the expiration of the 180 days for service. Therefore, Defendant BOH's appearance did not waive the personal service requirement. *See* IDS Life Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537, 540 (7th Cir.1998)(a defendant does not waive personal jurisdiction when it is entitled to raise the defense but participates in litigation at the court's direction).

Consequently, the Court currently has no personal jurisdiction over the Defendant BOH, as personal service was never made pursuant to GRCP Rule 4, nor did the Plaintiffs request service through publication or mailing pursuant to 7 GCA § 14106, within 180 days of the filing of the complaint. As no personal jurisdiction was ever acquired by the Court over Defendant

BOH, the claim against the Defendant BOH must be dismissed for that reason, and the Court may do so "on its own initiative." GRCP Rule 4(m)(2010); *see also* Vanderbilt v. Vanderbilt, 354 U.S. 416, 418 (1957); Hansberry v. Lee, 311 U.S. 32, 40–41(1940); and Pennoyer v. Neff, 95 U.S. 714 (1878).

Because dismissal must now occur on the Court's own initiative, pursuant to Rule 4(m), and under the terms the Court deems just, pursuant to Rule 41(a)(2), the Court is left with the question of whether the claim should be dismissed with or without prejudice. Rule 4(m) states that the claim should be dismissed without prejudice by the Court if the reason for dismissal is the failure to timely serve under the rule. GRCP Rule 4(m)(2010). Despite this rule, it appears to the Court that no personal jurisdiction can now be acquired by the Court over Defendant BOH, as to the claim of negligence asserted in the Plaintiffs' Amended Complaint.

When a statute of limitations is set by federal law, "for limitations purposes, a civil action is commenced upon the filing of a complaint, and 'remains pending in an inchoate state until service is completed unless and until an action is dismissed for failure to prosecute under Rule 41(b).'" U.S. v. Wahl, 583 F.2d 285, 289 (6th Cir.1978)(quoting Messenger v. United States, 231 F.2d 328, 329 (2d Cir. 1956)). Thus, a federal statute of limitations is tolled merely by the filing of a complaint under Rule 3, whether or not personal service is effected, and is tolled until the case is dismissed. Id.; *accord* Bomar v. Keyes, 162 F.2d 136 (2d Cir. 1947); Isaacks v. Jeffers, 144 F.2d 26 (10th Cir. 1944); Moore Co. of Sikeston, Mo. v. Sid Richardson Carbon & Gas Co., 347 F.2d 921 (8th Cir. 1965); Windbrooke Development Corp. v. Environmental Enterprises, Inc. of Fla., 524 F.2d 461 (5th Cir. 1975); Metropolitan Paving Co. v. Int'l Union of Operating Engineers, 439 F.2d 300, 306 (10th Cir. 1971); Weaver v. United California Bank, 350 F.Supp.

1373 (N.D.Cal.1972); and McCrea v. General Motors Corp., 53 F.R.D. 384 (D.Mont.1971).

However, a state statute of limitations is not similarly affected. As stated by the United States Supreme Court:

> In a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations. See West v. Conrail, 481 U.S. 35, 39, 107 S.Ct. 1538, 1541, 95 L.Ed.2d 32 (1987). In a federal-court suit on a state-created right, however, a plaintiff must serve process before the statute of limitations has run, if state law so requires for a similar state-court suit. See Walker v. Armco Steel Corp., 446 U.S. 740, 752-753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980) (reaffirming Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949)).

Henderson v. U.S., 517 U.S. 654, 657, n.2 (1996).

When a cause of action is subject to a state statute of limitations, "insufficient service of process will not suffice to toll the statute of limitations," even when interpreted under the Federal Rules of Civil Procedure. Procter & Gamble Cellulose Co. v. Viskoza-Loznica, 33 F.Supp.2d 644, 667 (W.Dist.Tenn.1998); see also Cole v. Travelers Ins. Co., 208 F.Supp.2d 248, 256--8 (Dist.Conn.2002)(state statute of limitations on claims, though tolled by the filing of complaint, will begin to run again when plaintiff does not serve the defendants within time period under Rule 4(m), unless good cause is shown for failure to serve, thus warranting extension); Smith v. Commodore Cruise Line Ltd., 124 F.Supp.2d 150, 155 (S.Dist.N.Y.2000) (action would be barred by the statute of limitations, for failure to provide personal service within time period provided by Rule 4(m), unless court would be inclined to exercise its discretion to allow for late service).

In this case, the Guam statute of limitations for negligence is three years. 7 GCA § 11305(1) (2010). The same is true for the remainder of the Plaintiffs' claims of trespass and injury to real property. 7 GCA § 11305(2) (2010). The Plaintiffs claim that Defendant BOH

owed them a duty to inform them of any deficiencies or disputed boundaries on the real property they purchased. The Plaintiffs allege that they were first made aware of a disputed boundary between Lots 15 and 16 in September of 2005, when Defendant Castro showed intentions of erecting a fence on the disputed portion of property, by placing string along the proposed boundary line. Pls.' Am. Compl., p.2, ¶4 (filed August 30, 2006); *see also* Exhibit H, labeled Exhibit 3, Defendants Castro Exhibit Binder.

When Plaintiffs first filed their claim of negligence against Defendant BOH, approximately eleven months had elapsed since the discovery of the property dispute. The statute of limitations was tolled during the 180 days allowed for service, however, it began running again on February 26, 2007. Thus, the statute of limitations expired in approximately March of 2009. No personal service was ever effected, and trial in the matter began in June of 2010. Accordingly, the Court finds that case against the Defendant BOH must be dismissed with prejudice, as the Plaintiffs can no longer re-file the claim(s) against Defendant BOH.

In addition, this Court has previously warned the Plaintiffs' attorney that it would not tolerate the pendency of lingering claims, stating:

> the Court, on its own, will not hesitate to issue an order to show cause, and ultimately, issue sanctions for the failure to dismiss Defendant Prieto from the remainder of the complaint under Rule 11, including costs and fees to Defendant Prieto. Additionally, the Plaintiffs' attorney could be subject to discipline for a violation of Rule 3.1 of the Guam Rules of Professional Conduct if there is no basis in fact to support the pendency of the remaining claims of trespass, ejectment, boundary dispute, nuisance, adverse possession, boundary by acquiescence, boundary established by estoppel, easement by prescription, and interference with easement against Defendant Prieto.

Moroni et. al. v. Castro et. al., Civil Case No. 1004-05, Decision and Order re Defendant Prieto's Motion for Summary Judgment, p. 15, lines 4–12 (September 9, 2009).

In this case, the Plaintiffs added Defendant BOH as a named defendant, but never served Defendant BOH, and Plaintiffs' attorney admitted that they intentionally failed to serve the Defendant BOH, as they had abandoned any ideas of prosecuting the action against Defendant BOH, yet, the Plaintiffs' attorney never moved to dismiss the case against Defendant BOH. This failure has cost the Court additional time and effort in order to resolve this case, and evidences little to no concern for the efficient use of judicial resources.

Rule 11 of the Guam Rules of Civil Procedure prohibits an attorney from filing a pleading for an improper purpose, and allows the Court, *sua sponte*, to sanction any attorney who makes such a filing, after notice and an opportunity to be heard. The rule states:

> (b) Representations to Court. *By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading*, written motion, or other paper, *an attorney* or unrepresented party *is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–* (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> . . . .

GRCP Rule 11(b)(2010).

Whereas it appears that the Plaintiffs' attorney has violated GRCP Rule 11, regarding the failure to dismiss the Defendant BOH from the case when the decision was made not to prosecute the same, the Court has the ability to order Plaintiffs' attorney to show cause before this Court and give reason why he should not be sanctioned for violating the Guam Rules of Civil Procedure.

B)     Defendants Castro

Plaintiffs' claims against the Defendants Castro are for trespass, based upon their assertion that Defendants were building their fence on Plaintiffs' property; ejectment, based upon the encroaching fence on Plaintiffs' property; a boundary dispute, requesting that the Court identify

the proper boundary line between the parties' properties; private nuisance, based upon the Defendants' construction of a fence upon Plaintiffs' property causing an intrusion onto Plaintiffs' property; adverse possession, based upon the encroachment by the driveway/carport onto the Defendants' land claiming to have adversely possessed the property that is encroached upon; boundary by estoppel, based upon the encroachment of the carport upon Defendants' property; easement by prescription, based upon encroachment by the carport upon Defendants' property; and interference with easement, based on the placement of the fence on Plaintiffs' property.

Defendants have counterclaimed for trespass, asking that the encroaching driveway/CMU wall be removed from their property, asking for a determination of the correct location of the disputed boundary marker near the street, and requesting a determination that Plaintiffs' fence does not encroach upon the Plaintiffs' property. Defendants also request an award of attorneys' fees and costs.

The Court will organize and address the Plaintiffs' claims and the Defendants' counterclaims as they relate to three subjects: (A) the location of the entire boundary line; (B) the fence dispute; and (C) the driveway/CMU wall dispute. The Plaintiffs' claims relating to the fence dispute are: (1) Private Nuisance; (2) Trespass; and (3) Interference with Easement. The Castros have no counterclaims specifically concerning the fence dispute. The Plaintiffs' claims relating to the driveway/CMU wall dispute are: (4) Ejectment; (5) Adverse Possession/Easement by Prescription; and (6) Boundary by Estoppel. The Castros' counterclaim relating to the driveway/CMU wall dispute is: (7) Trespass. The Court will first address the overarching claim of (A) Boundary Dispute, in which the Plaintiffs ask that the Court settle the exact location of the boundary, and the Castros request the same, as it will determine all other issues.

(A) Establishing the Boundary; Boundary Dispute

The evidence of all surveys and surveyors overwhelmingly establishes that the fence built by the Defendants Castro does not encroach on Lot 16, owned by the Plaintiffs. It also overwhelmingly establishes that the driveway/CMU wall does encroach partially on Lot 15, owned by Defendant Anthony Castro. The only difference of opinion between the surveyors regards the amount of the encroachment of the driveway/CMU wall. The testimony and survey of Meliton Santos conclusively establishes boundary points and a definite calculation of the total area of the encroachment, whereas the testimony and survey of Efren Santos contains no geographical location of the boundary points and no concrete estimate of the area of the encroachment of the driveway/CMU wall. Because the survey of Meliton Santos contains exact data from which the Court may establish boundary points, the Court adopts the boundary from his survey map as the actual boundary between Lots 15 and 16. Accordingly, the Southwestern terminal point of the boundary is located at N 196079.4553, E 100281.4862, and the Northeastern terminal point of the boundary nearest Senator Gibson Drive is located at N 196109.8145, E 100413.8503, and the boundary between Lots 15 and 16 is the straight line drawn between those two points.

(B) The Fence Dispute

(1)    Private Nuisance

Guam's real property nuisance law states:

[a]n action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as the same is defined in 20 GCA, Remedies, and by the judgment in such action, the nuisance may be enjoined or abated as well as damages recovered therefore. . . .

21 G.C.A. §23101 (2008).

20 GCA §10101 defines a nuisance as "[a]nything which is . . . an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . . ." Id. (2011).

Because the Court has determined that the boundary between Lots 15 and 16 is the boundary stated in the survey map created by Meliton Santos, the fence is not located on the Plaintiffs' real property, and therefore, it is not an obstruction to the Plaintiffs' free use of their real property, Lot 16. Accordingly, the Defendants are entitled to judgment in their favor as to this claim.

### (2)    Trespass

In Guam, "[a] party claiming trespass must prove the following elements: a) the tortfeasor intentionally; b) enters land in possession of another, or causes a thing or a third person to do so; or c) remains on the land; or d) fails to remove from the land a thing which he is under a duty to remove." Guerrero v. DLB Const. Co., 1999 Guam 9, ¶ 16 (Sup. Ct. Guam 1999) (citing and adopting the Restatement (Second) Torts § 158 (1988)).

As the Court has determined that the fence built by the Defendants Castro is not located on Lot 16, but is wholly located on Lot 15, the Defendants Castro have not placed a thing on land in possession of the Plaintiffs, and the Plaintiffs' claim of trespass fails. The Defendants Castro are entitled to judgment in their favor as to this claim as well.

### (3)    Interference with Easement

The Court will first address whether the Plaintiffs have an easement on Lot 15, and therefore, whether the Defendants have interfered with that easement.

"An easement is defined as 'an interest in land created by grant or agreement, express or implied, which confers on its owners a right to some profit or benefit, dominion, or lawful use out of or over the estate of another.'" Lizama v. Department of Public Works, 2005 Guam 12, ¶16 (Sup. Ct. Guam 2005)(quoting Costa Mesa Union School Dist. v. Security First Nat. Bank, 62 Cal.Rptr. 113, 118 (Cal.Ct.App.1967)). There are two tenements involved in every easement: (1) the dominant tenement, which holds the right to the easement; and (2) the servient tenement, upon which the servitude of the easement rests. 21 GCA § 7103; *see also* Lizama v. Department of Public Works, 2005 Guam 12, ¶16 (Sup.Ct. Guam 2005). Under Guam law, there are four primary ways in which an easement may be created: (1) by express grant; (2) by implication; (3) by necessity; and (4) by prescription. Id. at ¶19, n.2.

The first two methods of creating an easement require a written instrument delineating or referencing such easement. Id. at ¶20 (quoting 28A C.J.S. Easements § 53 (2004)), and ¶24. No such written instrument has been presented by the Plaintiffs in this case.

An easement by necessity "typically arises where an owner severs a landlocked portion of his property by conveying such parcel to another." Id. at 38 (quoting Ludke v. Egan, 274 N.W.2d 641, 645 (Wis.1979)). Lot 16 is not landlocked, and has clear access to rights of way.

The Court will separately determine whether the Plaintiffs have an easement by prescription later in this decision, as the Plaintiffs have separately set that forth as a claim. Accordingly, the Court finds that the Plaintiffs do not have an easement by express grant, by implication, or by necessity, and the Defendants cannot have interfered with such easement by building a fence on Lot 15. The Defendants are entitled to judgment on these claims.

### (C) The Driveway/CMU wall Dispute

#### (4) Ejectment

The Plaintiffs claim that they are entitled to maintain an action for ejectment based on the existence of the driveway/CMU wall. Black's Law Dictionary defines ejectment as:

> 1. The ejection of an owner or occupier from property. 2. A legal action by which a person wrongfully ejected from property seeks to recover possession, damages, and costs. 3. The writ by which such an action is begun. • The essential allegations in an action for ejectment are that (1) the plaintiff has title to the land, (2) the plaintiff has been wrongfully dispossessed or ousted, and (3) the plaintiff has suffered damages. — Also termed action of ejectment; action for the recovery of land; ejection.

BLACK'S LAW DICTIONARY (9th ed. 2009), ejectment.

Under Guam's Land Title Registration Law, protections against ejectment are specifically afforded to holders of certificates of title, pursuant to 21 GCA § 29142. That section provides:

> § 29142. Conclusiveness of Certificate of Actions of Ejectment or Partition or Possession. *In any action or proceeding brought for ejectment*, partitions, or possession of land, *the certificate of title of a registered owner shall be held in every court to be conclusive evidence*, except as herein otherwise provided, that such registered owner has a good and valid title to the land, and for the estate or interest therein mentioned or described, and *that such registered owner is entitled to the possession of said land.*

21 GCA § 29142 (2011)(emphases added).

Under both the definition of the elements of an action for ejectment and 21 GCA § 29142, as Defendant Anthony Castro is the holder of a certificate of title to the entirety of Lot 15, the certificate of title is conclusive proof that he is entitled to the possession of Lot 15, against the Plaintiffs' claims of ejectment. The Plaintiffs have not proven that they own title to the portions of Lot 15 which are encroached by their driveway/CMU wall, and the Defendants Castro are entitled to judgment as to this claim.

(5)    Adverse Possession/Easement by Prescription

Guam law provides that, "[a]n estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing." 21 G.C.A. § 4101 (2011).

The Plaintiffs argue that they acquired a prescriptive easement across the property, Lizama v. Department of Public Works, 2005 Guam 12, ¶19. n.2 (Sup.Ct. Guam 2005), through adverse possession. The Plaintiffs argue that under Guam law, a prescriptive easement arises so long as the easement is used, uninterrupted for a period of ten (10) years, under the statute for adverse possession. See 7 GCA §11212 (2011).   Plaintiffs claim that the use of the CMU wall was uninterrupted for approximately 18 or 19 years, and therefore, undisputably, they have met the requirements for the creation of an easement by prescription.

A prescriptive easement is substantially related to the concept of adverse possession, and a party claiming an easement by prescription must meet the requirements of a statute of adverse possession. However, the Plaintiffs have overlooked nearly all of the elements essential to the establishment of a prescriptive easement.

First, registered property may not be acquired through adverse possession. 21 GCA §29136 (2011). There is no dispute that Lot 15 is registered land, and has been registered since 1949. Therefore, the Plaintiffs cannot acquire any portion of Lot 15 through adverse possession, and may not claim a prescriptive easement.

Next, even if a prescriptive easement were an available remedy, the Plaintiffs have failed to meet any of the requirements for adverse possession.  21 GCA § 25111 is the statute for

adverse possession. 7 GCA §11212 merely sets the statute of limitations period for adverse possession. The elements of adverse possession under 21 GCA § 25111 require that the party or his predecessor in interest must be in possession of the property for twenty (20) years prior to filing a complaint for adverse possession. The testimony at trial was that the encroaching structure was built in 1986 or 1987, but the original Complaint was filed in 2005 by the Plaintiffs, which is less than the twenty (20) years of continuous possession necessary to adversely acquire the property.

Next, the statute requires that the Plaintiff's must have paid five (5) years of property taxes on the claimed area before filing the complaint. In addition, 7 GCA §11212 mandates that the filing party must "have paid all taxes which have been levied and assessed on such land." The Plaintiffs provided no evidence to show that they have paid any taxes on the land which they have allegedly acquired through a prescriptive easement.

21 GCA § 25111 further mandates that a complaint alleging adverse possession must be verified. Neither the Plaintiffs' Complaint nor the Amended Complain is verified and therefore, the Plaintiffs may not proceed with such a claim.

The final requirement of an easement by prescription is that the use must be hostile to the possessor of the land, and cannot occur if the possessor is unaware of such use. In general, "[t]o create a prescriptive easement, the use and enjoyment of the property *must be adverse*, under a claim of right, continuous, uninterrupted, open, visible, exclusive, *with the knowledge and acquiescence of the owner* of the servient tenement, and must continue for the full prescriptive period." Burlison v. U.S., 533 F.3d 419, 428 (6th Cir. 2008) (emphases added); *see also* Chevy Chase Land Co. of Montgomery County, MD v. U.S., 37 Fed.Cl 545, 593–4 (Fed.Cl. 1997); Ellis

v. Arkansas Louisiana Gas Co., 609 F.2d 436, 441 (10th Cir. 1979); Confederated Salish and Kootenai Tribes of Flathead Reservation v. Vulles, 437 F.2d 177, 180 (9th Cir. 1971); RKO-Stanley Warner Theatres, Inc. v. Mellon Nat. Bank & Trust Co., 436 F.2d 1297, 1301 (3d Cir. 1970); Southern Bell Tel. & Tel. Co. v. Southern Precision Pattern Works, 251 F.2d 537, 540 (5th Cir. 1958).

In this case, the Plaintiffs cannot meet the burden of proving that their use of the property was adversely made with knowledge of the owner for the period of ten or twenty years. Their own evidence demonstrates that the previous owner of Lot 15, Mary Castro Perez was unaware that the CMU wall had been partially built on Lot 15. Further, the Defendants Castro testified that they were unaware that the CMU wall encroached on Lot 15 until 2005, when the Defendants hired Meliton Santos to determine the boundary between Lots 15 and 16. More importantly, both the previous owner of Lot 16, Mr. Hemlani, and the Plaintiffs were unaware that their CMU wall was encroaching on Lot 15 until 2005, when the Plaintiffs filed suit. Such use cannot amount to the adverse use required to sustain a claim of easement by prescription. Burlison v. U.S., 533 F.3d 419, 428 (6th Cir. 2008) (citing Lively v. Noe, 460 S.W.2d 852, 854 (1970); Chevy Chase Land Co. of Montgomery County, MD v. U.S., 37 Fed.Cl 545, 593–4 (Fed.Cl. 1997); Nature Conservancy v. Machipongo Club, Inc., 571 F.2d 1294 (4th Cir. 1978); U.S. v. Fallbrook Public Utility Dist., 347 F.2d 48, 57 (9th Cir. 1965). Both parties submitted evidence showing that the Plaintiffs' entry onto the property was made accidentally, without the knowledge of any of the owners of either Lot 15 or Lot 16, and was not open, notorious, or adverse to either Mary Castro Perez or the Defendants Castro until 2005, *see* Restatement (Second) of Torts, § 171(b), comment (e). Therefore, the Court cannot find that an easement by prescription was created in this case.

Because the Plaintiffs have failed to meet even one of the requirements of 21 GCA § 25111, the Defendants Castro are entitled to judgment as to this claim.

### (6) Boundary by Estoppel

Under section 158 of the Restatement (Second) of Torts, conduct which would otherwise constitute trespass is not a trespass if it is privileged in any manner. Restatement (Second) Torts §158 (1988)(comment (e)). A party may be privileged to enter property by consent, license, or through the creation of an easement. Restatement (Second) of Torts §§ 892–892D, and 167–190; *see also* N.L.R.B. v. Calkins, 187 F.3d 1080, 1092–3 (9th Cir.1999); and Lal v. CBS, Inc., 726 F.2d 97, 101 (4th Cir. 1984). In addition, the doctrine of equitable estoppel may be raised as a defense to an action for trespass. Steel Creek Development Corp. v. Smith, 268 S.E.2d 205, 210–11 (N.C. 1980).

In this case, there are three separate questions which are determinative of whether the Plaintiffs' CMU wall may rightfully remain on the land of the Defendants Castro, and will not constitute a continuing trespass because the Plaintiffs have an easement established through estoppel: 1) whether an easement was created, which constituted a legally valid encumbrance on Lot 15, which runs with the land; 2) whether a license or consent was granted by the Defendants; and 3) whether the Defendants Castro are equitably estopped from claiming trespass because the license has become irrevocable. Accordingly, the substantive laws governing trespass, easements, title, and land registration are all determinative as to the facts that are material to this issue.

As the Court has already found that the Plaintiffs do not have an easement through Lot 15, the Court must address whether the Plaintiffs were privileged to enter Lot 15 through a license

granted by the Defendants, and whether any such license could have become irrevocable through estoppel.

A license is express or implied consent from an owner of real property to perform an act or acts upon property, which may granted orally, or in writing. Markstein v. Countryside I, L.L.C., 77 P.3d 389, 398 (Wyo. 2003) (a license may be created by parol or a writing, or can be implied from the acts of the parties, from their relations, and from usage and custom); Colvin v. Southern Cal. Edison Co., 240 Cal.Rptr. 142, 146 (Cal.App. 2 Dist.,1987) (*distinguished on other grounds by* Ornelas v. Randolph,17 Cal.Rptr.2d 594, 599 (Cal.1993); Waterville Estates Ass'n v. Town of Campton, 446 A.2d 1167, 1169 (N.H.1982). A license that has not been revoked is a complete defense to trespass. N.L.R.B. v. Calkins, 187 F.3d 1080, 1092–3 (9th Cir.1999); and Lal v. CBS, Inc., 726 F.2d 97, 101 (4th Cir. 1984). Like an easement, it is an interest in property which is less than an estate, but is the right to some use or benefit of the property. O'Shea v. Claude C. Wood Co., 97 Cal.App.3d 903, 909 (Cal.1979). The primary distinction between a license and an easement is that a license is normally revocable at will by the grantor. Golden West Baseball Co. v. City of Anaheim, 31 Cal.Rptr.2d 378, 395 (Cal.App.4 Dist. 1994); Markstein v. Countryside I, L.L.C., 77 P.3d 389, 398 (Wyo. 2003).

In this case, the testimony of Mary Castro Perez, Ismael Hemlani, and the Defendants Castro unambiguously establishes that no permission or license was ever granted by the owners of Lot 15 to the owners of Lot 16 to build the driveway/CMU wall on any portion of Lot 15.

There is one generally recognized exception to the rule that a license is revocable, which is license by estoppel. When a licensor grants consent to erect structures or make improvements on the licensor's real property, which is followed by an actual expenditure of labor on

improvements to the servient tenement by the licensee, in reliance on the grant of consent, the license becomes irrevocable. <u>Golden West Baseball Co. v. City of Anaheim</u>, 31 Cal.Rptr.2d 378, 395 (Cal.App.4 Dist. 1994); <u>Geddes v. Mill Creek Country Club, Inc.</u>, 751 N.E.2d 1150, 1157 (Ill. 2001); <u>Dance v. Tatum</u>, 629 So.2d 127, 128–9 (Fla. 1993); <u>Holbrook v. Taylor</u>, 532 S.W.2d 763, 764–6 (Ky. 1976); <u>Hammond v. Mustard</u>, 64 Cal.Rptr. 829, 831–2 (Cal.App. 1967); <u>Powers v. Coos Bay Lumber Co.</u>, 263 P.2d 913, 950–3 (Or. 1953); <u>Shepard v. Purvine</u>, 248 P.2d 352, 361–2 (Or. 1952) (irrevocable license granted to construct water line); *see also* Restatement (Second) of Property § 519 (4), comments (e) through (g).

In many of the aforementioned authorities, the courts have determined that the license becomes irrevocable through the doctrine of estoppel. In these jurisdictions, irrevocable license through estoppel may be raised as a successful defense to a claim of trespass when an owner of property voluntarily imposes an apparent servitude on his or her property, and another person, acting reasonably and in good faith, believes that the servitude is permanent and in reliance upon that belief enters the property and makes improvements which he or she would not have made otherwise, to his or her detriment. <u>Geddes v. Mill Creek Country Club, Inc.</u>, 751 N.E.2d 1150, 1157 (Ill. 2001); <u>Steel Creek Development Corp. v. Smith</u>, 268 S.E.2d 205, 211 (N.C., 1980); <u>Holbrook v. Taylor</u>, 532 S.W.2d 763, 764–66 (Ky. 1976); <u>Hammond v. Mustard</u>, 64 Cal.Rptr. 829, 831–2 (Cal.App. 1967); <u>Shepard v. Purvine</u>, 248 P.2d 352, 361–2 (Or. 1952); *see also* Restatement (Second) of Property § 519 (4), comments (e) through (g); *but cf.* <u>Dance v. Tatum</u>, 629 So.2d 127, 128–9 (Fla. 1993) (irrevocable license is just an irrevocable license and is distinct from easement through estoppel).

Guam has codified the doctrine of estoppel in 6 GCA § 5106(3), which provides:

Specification of Conclusive Presumptions. The following presumptions, and no others, are deemed conclusive: . . .(3) Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission be permitted to falsify it; . . . ."

6 GCA § 5106(3) (2011).

In the present case, the Plaintiffs have not met their burden of presenting evidence to support the defense of irrevocable license by estoppel. The Plaintiffs have failed to prove that there was ever a license granted by any of the owners of Lot 15 to any of the owners of Lot 16, for the construction of the driveway/CMU wall to be built on a portion of Lot 15, and therefore, cannot show reliance upon that permission in order to show that the license became irrevocable. Further, the Plaintiffs have not shown that the Defendants Castro or Mary Castro Perez "intentionally and deliberately" led any of the owners of Lot 16 to believe that they were allowed to build or maintain the driveway/CMU wall on any portion of Lot 15, as required under 6 GCA § 5106(3). The Plaintiffs have failed to prove that the boundary should be moved to accommodate the Plaintiffs' driveway/CMU wall due to equitable estoppel considerations, and the Defendants are also entitled to judgment as to this claim.

(7)     Trespass Counterclaim

The Defendants Castro have brought a counterclaim alleging trespass based upon the retaining CMU wall that was partially built on Lot 15. The Court has concluded that the wall, does in fact, encroach on Lot 15, and therefore, it constitutes a trespass. The Defendants Castro have requested that the Court grant injunctive relief by ordering the Plaintiffs to tear down those portions of the CMU wall which encroach on the Castros' real property. The Plaintiffs claim in

defense that the encroaching CMU wall was built by previous owners of Lot 16, with the knowledge of the previous owners of Lot No. 15. On this basis, the Plaintiffs assert that no claim of trespass can be maintained against them, because they did not build the wall, and the Defendants Castro did not own the property when the wall was built. The Plaintiffs further argue that the statute of limitations for trespass based upon the existence of the CMU wall has lapsed, and that laches should prevent the Defendants from maintaining an action regarding the CMU wall.

  1)  Effect of Transfer of Legal Interest in Trespassing Structure

The Court has previously determined that the Restatement (Second) of Torts § 160 specifically allows a party to maintain an action in trespass against a subsequent owner of the trespassing object. Moroni et. al. v. Castro et. al., Civil Case No. 1004-05, Decision and Order re Defendant Santos' Motion for Summary Judgment, pp. 14–15 (June 14, 2010). Section 160 states:

> A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing *which the actor or his predecessor in legal interest has placed on the land* . . . if the actor fails to remove it after the consent has been effectively terminated, or . . . if the actor fails to remove it after the privilege has been terminated, by its accomplishment or otherwise.

The Restatement (Second) of Torts § 160 (1988)(emphasis added).

Accordingly, the Defendants Castro are able to maintain an action against the Plaintiffs for trespass based upon an encroaching structure built by the Plaintiffs' predecessor in interest.

  2)  Continuing Trespass/Statute of Limitations

The Court has already determined that the Defendants' claim of trespass is not barred by the statute of limitations. Moroni et. al. v. Castro et. al., Civil Case No. 1004-05, Decision and

Order re Defendant Santos' Motion for Summary Judgment, pp. 15–16 (June 14, 2010).

### 3) Defendants' Standing to Maintain Trespass Action as Successor in Interest

Comment (d) to the Restatement (Second) of Torts § 162 states, "[i]f the conduct of the actor is a continuing trespass, any person in possession of the land at any time during its continuance may maintain an action for trespass." Restatement (Second) of Torts § 162, comment (d) (1988). Therefore, as previously explained by the Court, under Guam's adoption of the Restatements of Torts for trespass, the Defendants Castro are entitled to maintain an action against the Plaintiffs for the continuing trespass as successors in interest to the land. Moroni et. al. v. Castro et. al., Civil Case No. 1004-05, Decision and Order re Defendant Santos' Motion for Summary Judgment, p. 16 (June 14, 2010).

### 4) Laches

In order for the doctrine of laches to apply, there must be: '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice against the party asserting the defense.' Responsible Choices, 2007 Guam 20 ¶ 77 (quoting Torres v. Superior Court, CV90-00049, 1990 WL 320360, at *5 (D. Guam App. Div. Oct. 26, 1990)). In other words, laches protects against "inexcusable delay which prejudices the [opposing party]'s ability to respond." May v. People, 2005 Guam 17 ¶ 27.

Duenas v. Guam Election Com'n., 2008 Guam 1, 17 (Sup. Ct. Guam 2008).

"[L]aches is not, like [a statute of] limitation[s], a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced-an inequity founded upon some change in the condition or relations of the property or the parties." Id. (quoting Galliher v. Cadwell, 145 U.S. 368, 373 (1892)). Thus, an equitable claim may be barred by laches even though the statute of limitations has not yet run on the related legal claim. Id.; but see Ikelionwu v. United States, 150 F.3d 233, 238 (2d Cir.1998) (noting that "[i]n an equity action, if the applicable legal statute of limitations has not expired, there is rarely an occasion to invoke the doctrine of laches").

Yanfag v. Cyfred, Ltd., 2009 Guam 16, ¶13 (Sup. Ct. Guam 2009).

What will constitute laches is in part determined by the statute of limitations for an action, and by the statute governing the action itself. Id. at ¶¶ 14–15. However, the party asserting laches must always show that they were prejudiced by the act constituting laches.

In this case, the Court has determined that the statute of limitations begins to run anew with every moment of the continuing trespass of the driveway/CMU wall on portions of Lot 15. Although the Court recognizes that an action may be barred by laches even when it is not barred by a statute of limitations, the Court finds that it is clear, under the Restatement of Torts (Second), §§158–162, that an action for trespass may be maintained whenever the trespass is discovered, and there has been no license or easement granted by the owners of the real property.

Here, the Court finds that the Defendants Castro discovered the trespass in 2005, when they hired Meliton Santos to survey the boundary between Lots 15 and 16. Mary Castro Perez, the previous owner of Lot 15 was unaware of the encroachment/trespass of the driveway/CMU wall while she owned the lot. Suit based on the trespass was brought in 2005, the same year as its discovery, and the same year that the Plaintiffs purchased Lot 16, with its attached driveway/CMU wall. Accordingly, the Court finds that the Defendants Castro were not guilty of laches in bringing a claim for trespass based on the driveway/CMU wall, and that the Plaintiffs were not prejudiced by any alleged failure to bring an action for trespass prior to 2005, when they bought Lot 16. Accordingly, laches does not bar the claim.

5)     Other Theories Have not been Presented and Supported

Because the Defendants Castro are requesting an injunction to force the Plaintiffs to tear down portions of their long existing retaining wall based on the alleged trespass, Defs.' Castro Ans. and Countercl., p.6, ¶¶ 15 and 18, filed November 14, 2005, the Court previously suggested

Page 32 of 37

that the Plaintiffs might be able to assert the doctrine of relative hardship as a defense to the alleged trespass. *See* Moroni et. al. v. Castro et. al., Civil Case No. 1004-05, Decision and Order re Defendant Santos' Motion for Summary Judgment, pp. 17–18 (June 14, 2010).

The doctrine of relative hardship applies to trespass actions in which a party requests judicial relief in the form of an injunction for the removal of a permanent structure, and states, in general:

> Despite a proper showing in other respects of a right to injunctive aid, if a plaintiff is merely seeking to protect a technical and unsubstantial right, and the issuance of the injunction will bring no actual advantage, it may be properly refused where to do otherwise would result in unusual hardship to the defendant . . . .

Wright v. Best, 19 Cal.2d 368, 386, 121 P.2d 702 (Cal.Sup.Ct.1942).

This rule is applicable to actions where trespass is proven, and the relief sought is removal of an erected structure. Green v. Normandy Park, 151 P.3d 1038, 1055 (Wash.App.Div.1, 2007); Brookside Townhouse Ass'n v. Clarin, 682 N.W.2d 762, 768–69 (S.D.2004); Aragon v. Brown, 134 N.M. 459, 464, 78 P.3d 913, 918 (N.M.App.2003); and Pelosi v. Wailea Ranch Estates, 91 Hawai'i 478, 488, 985 P.2d 1045, 1055 (Hawai'i 1999). The doctrine is appropriately applied where "the encroachment does not irreparably injure the plaintiff, was innocently made, and where the cost of removal would be great compared to the inconvenience caused plaintiff by the continuance of the encroachment . . . ." Christensen v. Tucker, 114 Cal.App.2d 554, 559, 250 P.2d 660 (Cal.App.1 Dist. 1952).

Despite the Court's guidance, the Plaintiffs have never asserted the doctrine of relative hardship as an affirmative defense to the Defendants' counterclaim of trespass, requesting an injunction to tear down the Plaintiffs' CMU wall.

Rule 12(b) requires that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto, if one is required." GRCP Rule 12(b). Thus, under Rule 12(b), in order to raise it as a defense, the Plaintiffs were required to affirmatively plead the issue in their answer, or in a subsequent amended answer as allowed by the Court. *See* G.R.C.P. Rule 15(a); and Arashi & Co., Inc. v. Nakashima Enterprises, Inc., 2005 Guam 21, ¶15.

On November 23, 2005, Plaintiffs filed an Answer which failed to set forth the defense of the doctrine of relative hardships. Pls.' Ans., filed November 23, 2005. No mention of hardship regarding removal of the driveway/CMU wall is made anywhere within the Answer filed by the Plaintiffs. Id.

G.R.C.P. 15(a) provides in relevant part:

> **Amendments.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it has been served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

GRCP Rule 15(a)(2008).

Rule 15(a) generally grants a court the discretion to liberally allow a party to amend its pleading, so long as the party receives leave of the court. The Guam Supreme Court and the United States Supreme Court have held that, in general, a court may not deny a party's request for leave to amend without a justifying reason. Arashi & Co., Inc. v. Nakashima Enterprises, Inc., 2005 Guam 21, ¶16 (Guam Terr. 2005)(citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962)).

In _Arashi_, addressing a similar procedural issue, the Supreme Court of Guam held that the trial court did not abuse its discretion in allowing a party to amend its pleadings to include the affirmative defense of failure to obtain a business license even though its request for leave to amend was first raised in a motion for summary judgment. _Id._, at ¶¶15 and 19. Despite the obvious similarities, there is a key distinction between the procedure of that case and the situation before this Court. In this case, the Plaintiffs have never requested leave of the Court to amend their answer to allow them to assert the doctrine of relative hardships, either orally, in a formal motion, or in their previous Motion for Summary Judgment.

The holding of _Arashi_ did not dispense with the requirement of Rule 15(a) that a party request leave of the Court before amending their pleadings. Nothing in _Arashi_ allows a party to fail to make a request to amend its pleadings in order to assert a new defense. _Arashi_ merely holds that there are no formal requirements as to the _manner_ of the request. A party may request leave to amend either in a formal motion or as part of a motion to dismiss/motion for summary judgment, but the party must still _make the request_. Here, Plaintiffs have ignored the mandates of the Guam Rules of Civil Procedure and the Supreme Court of Guam.

There is no point in the requirement that a party file an answer if not to give the opposing party and the Court notice of the possible defenses to be asserted. Because the Plaintiffs have never requested (in either a formal motion for leave or within its previous Motion for Summary Judgment), nor received leave of Court to amend their answer, and have never amended their answer to assert the defense of the doctrine of relative hardships, the Court finds that the Plaintiffs have waived this defense by failing to raise it in an answer or amended answer prior to trial. _See_ Manvil Corp. v. E.C. Gozum & Co., Inc., 1998 Guam 20, ¶ 16 (Sup. Ct. Guam 1998); and

Citizens Security Bank v. Bidaure, 1997 Guam 3, ¶ 20 (Sup. Ct. Guam 1997).

More importantly, the Plaintiffs have failed to submit any evidence during the trial which would be required for the Court's application of the aforementioned doctrine, such as actual cost estimates regarding the removal of the CMU wall, or even testimony which would show that there would be great inconvenience and cost to the Plaintiffs should the Court order such.

In contrast, the Defendants Castro have actually submitted evidence to show that removal of the CMU wall is a necessary precaution, rather than the exercise or enforcement of a technical and inconsequential right, as they have shown that the CMU wall is starting to crumble at the foundations, and is showing signs of instability, which would support the issuance of a Court order requiring its removal.

Because the Defendants Castro have proven that the Plaintiffs' predecessor in interest intentionally caused a thing, the driveway/CMU wall to enter land in possession of their predecessor, in interest, Mary Castro Perez, which remains on the land, the Court finds that the Defendants Castro have proven all of the elements required for the tort of trespass. *See* Guerrero v. DLB Const. Co., 1999 Guam 9, ¶ 16 (Sup. Ct. Guam 1999) (citing and adopting the Restatement (Second) Torts § 158 (1988)).

As the Court has also determined that the Plaintiffs have failed to prove the elements of any legal defense to the claim of trespass, the Defendants Castro are entitled to judgment in their favor as to their counterclaim of trespass, and are entitled to the relief they seek.

Accordingly, the Court grants judgment in favor of the Defendants as to the counterclaim of trespass, and the Court issues an injunction requiring the Plaintiffs to remove all encroaching portions of the driveway/CMU wall, i.e., the eleven square feet of concrete which are located on

the Northwestern side of the boundary line of Lots 15 and 16, as depicted on the Survey Map created by Meliton Santos, within one hundred and eighty (180) days of the date of this Order.

In granting the judgment in favor of the Defendants Castro as to every claim alleged in both the Amended Complaint filed by the Plaintiffs, and the Answer and Counterclaim filed by the Defendants, the Court could find no evidentiary support shown at trial or in the exhibits for the Plaintiffs' positions. More importantly, based on the evidence at trial, Plaintiff Moroni was informed in 2005 by his own hired surveyor, Efren Santos, that his driveway/CMU wall encroached upon Lot 15, and that the Defendants' fence did not encroach upon Lot 16. Accordingly, there was no evidence to support the Plaintiffs' allegations of trespass, and Plaintiff Moroni was aware of this lack of evidence prior to filing this suit. Because Plaintiff Moroni is an attorney representing himself and Plaintiff Koegel, Plaintiff Moroni is subject to Rule 11 sanctions. It is apparent to this Court that Plaintiff Moroni signed his complaint in 2005, and his amended complaint in 2006, while he was aware that there was no evidentiary support for the positions taken in those pleadings. Again, the Court has the ability to order Plaintiffs' attorney to show cause before this Court and give reason why he should not be sanctioned for violating the Guam Rules of Civil Procedure. However, in light of the relief afforded to the Defendants, and against the Plaintiffs, the Court will refrain from issuing an Order to Show Cause against Plaintiff Moroni at this time.

All findings of fact may be interpreted as conclusions of law and *vice versa*.

**SO ADJUDGED**, this  FEB 0 3 2011          .

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
Clerk of the ...

FEB 03 ...

Valerie D. Finorio
Deputy Clerk, Superior Court of Guam

_____
**HONORABLE ARTHUR R. BARCINAS**
Judge, Superior Court of Guam

Page 37 of 37